UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS HEART CENTER, INC., Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   vs.<br><br>FOREST PHARMACEUTICALS, INC., and THE PEER GROUP, INC.,<br><br>      Defendants. | Case No.  4:12-CV-02224 |

### MEMORANDUM AND ORDER

Presently pending before the Court is Defendants' Motion to Dismiss the Complaint or, in the Alternative, Dismiss or Strike the Class Allegations from the Complaint. (Doc. No. 17.) The matter is fully briefed and ready for disposition.

### I.  BACKGROUND

This putative class action was instituted by Plaintiff St. Louis Heart Center, Inc. ("Plaintiff" or "Heart Center") in state court on October 4, 2012.  The action was removed to this Court by Defendant Forest Pharmaceuticals, Inc., with the consent of Defendant The Peer Group, Inc., pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, on November 30, 2012.[1]  (Doc. No. 1.)  On January 4, 2013, Defendants moved jointly to dismiss Plaintiff's Complaint or, in the alternative, to dismiss or strike the class allegations therein.  (Doc. No. 17.)  The Court granted Plaintiff's motion to voluntarily dismiss the two state law claims in its Complaint—for common law conversion and violations of the Missouri Consumer Fraud and Deceptive Business Practices Act—on January 10,

---

[1] Defendants Forest Pharmaceuticals, Inc. and The Peer Group, Inc. will be referred to, collectively, as "Defendants," and Defendant Forest Pharmaceuticals will be referred to as "Forest."

2013. (Doc. No. 23.) Plaintiff filed an Amended Complaint, correcting a typographical error in the original, on February 26, 2013. (Doc. No. 32.) Because the Amended Complaint makes no material alterations to the original, the Court deems the Amended Complaint the operative "Complaint" in this action and will consider Defendants' pending motion in reference to this Complaint.

Plaintiff alleges that, between August 3, 2010 and January 4, 2011, Defendants sent 40 unsolicited fax messages to Plaintiff, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Compl. ¶¶ 10, 33 & Exhs. 1-40.) Plaintiff claims that the fax messages were sent systematically by Defendants and that "Defendants approved, authorized and participated in the scheme to broadcast faxes by (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions." (Compl. ¶ 11.) According to Plaintiff, the fax messages were a feature of Defendants' marketing operations and constitute "material advertising the commercial availability of any property, goods, or services." (Compl. ¶¶ 13-15.)

Plaintiff asserts that it did not have "an established business relationship with Defendants," and that transmission of the fax messages was part of a general campaign—that "Defendants faxed the same and similar facsimiles to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation." (Compl. ¶¶ 21-23.)

> Plaintiff brings a putative class action claim under the TCPA, defining the proposed class as:
>
> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants (3) with respect to whom Defendants cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendants does [*sic*] not have an

established business relationship and (5) which did not display a proper opt out notice.

(Compl. ¶ 33.)

Defendants have moved to dismiss Plaintiff's Complaint or, in the alternative, to dismiss or strike the class allegations from the Complaint. Defendants argue that Plaintiffs have failed to state a claim under the TCPA because the fax messages in question are not advertisements. Further, Defendants assert that Plaintiffs have failed to adequately plead a class action, and that under Fed.R.Civ.P. 12(b)(6), or alternatively under Fed.R.Civ.P. 12(f) and 23(c)(1), Plaintiff's class allegations should be dismissed or stricken. Because the Court (1) is unconvinced that the fax messages are not, as a matter of law, advertisements and (2) believes that disposition of the class issues in this case is premature, Defendants' motion will be denied for the reasons discussed below.

## II.  LEGAL STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally, in the light most favorable to the plaintiff. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *See Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)). The Court's assessment at this stage considers materials necessarily embraced by the pleadings, including exhibits attached to the complaint, and draws on the Court's judicial experience and common sense. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While a complaint attacked under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929.

### III.  DISCUSSION

A.  **The Telephone Consumer Protection Act**

Congress passed the TCPA in 1991, prompted by "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs.*, 132 S.Ct. 740, 744, 181 L.Ed.2d 881 (2012).  The TCPA "bans certain practices invasive of privacy and directs the Federal Communications Commission … to prescribe implementing regulations." *Id*.  The TCPA provides expressly for private lawsuits (*see* 27 U.S.C. 227(b)(3)), over which state and federal courts have concurrent jurisdiction (*see Mims*, 132 S.Ct. at 745, 181 L.Ed.2d 881).

The TCPA outlaws multiple abuses of telephone technology.  At issue here, the TCPA "proscribes sending unsolicited advertisements to fax machines." *Id*. at 745, 181 L.Ed.2d 881 (citing 47 U.S.C. § 227(b)(1)(C)).  "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).  The elements of a TCPA claim under 47 U.S.C. § 227(b)(1)(C) are that the defendant "(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) the facsimile constituted an advertisement." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008).[2]

---

[2] Under FCC rules and regulations implementing the TCPA, which the Court accepts as a permissible construction of the statute (*see Mims*, 132 S.Ct. at 751, 181 L.Ed.2d 881; *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)), a facsimile transmission is not unsolicited when the sender and the recipient have an existing business relationship.  *See In re Rules and Regulations Implementing the Telephone*

The TCPA "imposes, on anyone who sends an unsolicited fax advertisement, statutory damages of $500 per fax, which can be trebled if the court finds that the violation was willful or knowing. 47 U.S.C. § 227(b)(1)(C), (b)(3)." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 914 (7th Cir. 2011) (Posner, J.) (citations omitted). "Such 'junk faxes' consume the recipient's paper and ink without his consent and are thus a source of justified though usually minor irritation to recipients not interested in the advertised product or service." *Id*. at 914-915 (citing *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005)). "[T]he statute, with its draconian penalties for multiple faxes, is what it is." *Id*. at 915.

**B.     Defendants' Argument That the Fax Messages Are Not Advertisements**

Defendants contend that the fax messages received by Plaintiff do not constitute advertisements as a matter of law and that, therefore, this case should be dismissed because Plaintiff has failed to make out a requisite element of a claim under 47 U.S.C. § 227(b)(1)(C). *See Hinman*, 545 F. Supp. 2d at 805.

In support of their argument, Defendants point to three cases in which federal district courts have concluded that, as a matter of law on a motion to dismiss, the fax messages at issue therein did not constitute "advertisements" within the meaning of the TCPA: *N.B. Indus. v. Wells Fargo & Co.*, 2010 WL 4939970 (N.D. Cal. Nov 30, 2010) (holding that fax messages which were "merely applications for an award" did not constitute advertisements under the TCPA), *aff'd*, 465 Fed. Appx.

---

*Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 8770-71 (Oct. 16, 1992). The burden of demonstrating that a facsimile was not unsolicited, whether by way of an existing business relationship or another means, rests with the sender. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01, 25967 (May 3, 2006); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 21 F.C.C.R. 3787, 3812 (Apr. 6, 2006). In other words, a recipient's existing business relationship with a sender and a recipient's consent are affirmative defenses under the TCPA.

640 (9th Cir. 2012); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago*, 526 F. Supp. 2d 851 (N.D. Ill. 2007) (holding that a fax message which did not promote a "commercially available service" but instead promoted "a research study" did not constitute an advertisement under the TCPA); and *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Institute, Inc.*, 2006 WL 1766812 (W.D. Mo. June 23, 2006) (holding that a fax message "announcing the existence of a clinical drug trial" and seeking "individuals willing to serve as test subjects" did not constitute an advertisement under the TCPA), *aff'd*, 222 Fed. Appx. 530 (8th Cir. 2007).

*Phillips Randolph* and *Ameriguard* are short on analysis but, to the extent their holdings stand for the proposition that promotion of a research trial or study falls outside the scope of advertising as defined under the TCPA, the fax messages in this case appear to be something potentially more commercial in nature.

The fax messages received by Plaintiff[3] invite Dr. Ronald Weiss, a physician at the Heart Center, to attend, at no apparent cost, a "medical discussion regarding the treatment of hypertension." The invitations were sent "[o]n behalf of Forest Pharmaceuticals, Inc. and The Peer Group." Defendant Forest is the manufacturer of Bystolic, a prescription drug for the treatment of hypertension. The drug logo for Bystolic is displayed prominently on the fax messages. "Important Safety Information" concerning Bystolic appears at the bottom of the fax messages—information bearing no clear relationship to a "medical discussion" but rather to Bystolic as a hypertension treatment. A link to Bystolic's website is provided for "full Prescribing Information," *i.e.*, seemingly, as information for a prospective prescribing physician, such as Dr. Weiss.

Upon review of the fax messages sent to Plaintiff, the Court's attention is drawn to a category of fax messages discussed, but found inapplicable, in *N.B. Industries*:

---

[3] The fax messages received by Plaintiff—all substantively the same—are at Exhs. 1-40 of the Complaint.

> Messages that promote goods and services at no cost—including free magazine subscriptions, catalogues, consultations, and seminars—are unsolicited advertisements that require the sender to obtain the recipient's permission in advance (absent a pre-existing business relationship). The reason, the FCC explains, is that 'free' seminars often are a pretext for advertising commercial products and services. Similarly, 'free' publications often are part of a marketing campaign to sell property, goods, and services.

*Id*. at *6 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01, 25967 (May 3, 2006)).

In the Court's view, there is enough in the way of product-driven content in the fax messages here to raise an issue of fact whether a "medical discussion regarding the treatment of hypertension" is tantamount to a free seminar serving as "a pretext for advertising commercial products and services." Examination of cases considering, and regulations concerning, promotional activities directly within the industry at hand supports this view. *See, e.g.*, *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67-68, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (concluding that "information pamphlets" distributed as part of mailing campaign by contraceptive manufacturer "constitute[d] commercial speech notwithstanding the fact that they contain discussions of important public issues such as venereal disease and family planning"); *Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 64 (D.D.C. 1998), *vacated in part on other grounds*, 202 F.3d 331 (D.C. Cir. 2000) ("manufacturer sponsorship of CME seminars at which the sponsor's products are discussed and the distribution of enduring materials focusing on the manufacturer's product are properly classified as commercial speech [because] the activities at issue … 'propose a commercial transaction' as they suggest that a physician should prescribe—and a consumer therefore will purchase—the subject drug"); *see also, e.g.*, 21 CFR § 202.1 (FDA regulations directed at prescription drug advertising).

Thus, in short, the Court declines to hold, solely on the pleadings before it, that invitations to a "medical discussion regarding the treatment of hypertension" (1) sent by a pharmaceutical

manufacturer, (2) linked to that manufacturer's hypertension drug, and (3) addressed to a physician are not, as a matter of law, advertisements under the TCPA. *See* 47 U.S.C. § 227(a)(5).

**C.    Defendants' Argument That Plaintiff's Class Allegations Should Be Dismissed or Stricken**

Defendants seek to dismiss or strike the class allegations from Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, Fed.R.Civ.P. 12(f) and 23(c)(1).

Fed.R.Civ.P. 23(a) requires a plaintiff seeking class certification to meet four requirements—numerosity, commonality, typicality, and adequacy of representation. In addition, a plaintiff is required to meet one of the requirements of Fed.R.Civ.P. 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Defendants argue that two facets of Plaintiff's TCPA claim—(1) whether a potential class member had an existing business relationship with Defendants and (2) whether a potential class member consented to receive Defendants' fax messages—render Plaintiff's class allegations insufficient as a matter of law. Specifically, Defendants contend that the Court should hold Plaintiff cannot demonstrate commonality (Fed.R.Civ.P. 23(a)(2)), typicality (Fed.R.Civ.P. 23(a)(3)), and/or predominance (Fed.R.Civ.P. 23(b)(3)), based on no more than a review of Plaintiff's Complaint.

Under Fed.R.Civ.P. 23(c)(1)(a), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." *Id*. Fed.R.Civ.P. 23(c)(1) permits the Court to "address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010). But "where the dispute is factual and discovery is needed to determine whether a class should be certified, it may be premature to strike class allegations." *Id*.

While "class claims that fail to meet the requirements of Rule 23 may be properly dismissed

by granting a [motion to dismiss]" (*McCrary v. Stifel, Nicolaus & Co., Inc.*, 687 F.3d 1052, 1059 (8th Cir. 2012)), "[t]he propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (citing cases). The Court must have before it "sufficient material to determine the nature of the allegations, and rule on compliance with the Rule's requirements." *Id*. (quotations omitted).  "Where … the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *Id*.[4]

The question, then, is whether Plaintiff's class allegations are insufficient on their face and should therefore be dismissed or stricken absent discovery.  The Court concludes that such a course of action would, in this case, be premature.

Defendants do not site a single case where a federal district court has disposed of class issues under the TCPA on a motion to dismiss.  The Court is aware of at least one such case, *Goodrich Mgmt. Corp. v. Afgo Mech. Serv., Inc.*, 2009 WL 26022000 (D.N.J. Aug. 24, 2009), which was reversed by the Third Circuit in *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 92 (2011) (concluding that "delving into the propriety of class certification was the wrong focus at that early stage of the proceeding," *i.e.*, at the motion to dismiss stage).  The Court finds *Landsman* instructive.

The district court in *Landsman* had concluded, on the basis of the pleadings, that:  (1) the plaintiff could not satisfy the typicality requirement of Fed.R.Civ.P. 23(a)(3) because "[t]here were too many crucial factual determinations to be made with respect to the claims and defenses that will vary from party to party … [m]ost notably … consent to receive faxes and the existence of a prior

---

[4] In addition, Fed.R.Civ.P. 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Id*.  The Eighth Circuit views such motions with disfavor. *See Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

business relationship with Defendant" and (2) the plaintiff could not satisfy the predominance requirement of Fed.R.Civ.P. 23(b)(3) because these "party to party" variations created "numerous issues of law and fact that pertain only to individual plaintiffs and not to the class as a whole." *Goodrich*, 2009 WL 26022000, at *5.

The Third Circuit reversed the district court's decision on the class issues, deeming it—based as it was on the pleadings alone—"conclusory at best." *Landsman*, 640 F.3d at 93. The *Landsman* court noted: "When the District Court[] decided the class certification issue, there had been no motion for class certification and no discovery; [ruling] whether the class could potentially fit within Rule 23 … was premature." *Id*. With respect to the district court's assessment of the TCPA, the *Landsman* court observed, first, that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of faxes." *Id*. at 93-94 (citing *Gene & Gene v. BioPay LLC*, 541 F.3d 318, 327-28 (5th Cir. 2008)). Second, according to the *Landsman* court, "it [was] not clear that, as a matter of law, differences regarding consent [were] sufficient to defeat class certification." *Id*. at 94.

Ultimately, the *Landsman* court concluded: "Discovery is necessary for the district court to conduct the 'rigorous analysis' it is tasked with at this stage, and more than speculation and supposition is needed to say that any vehicle is really superior. A more robust record must be developed here as to the precise nature of the class claims." *Id*.[5]

The Court agrees with the assessment in *Landsman*—an assessment that addresses directly Defendants' concerns regarding potential recipients' existing business relationships with Defendants

---

[5] Like the Third Circuit, the Eighth Circuit has adopted a "rigorous analysis" standard with respect to class issues. *See, e.g.*, *In re Zurn Pex Plumbing Prod. Liability Litig.*, 644 F.3d 604, 611 (8th Cir. 2011).

- 10 -

and consent.[6]

The Court is informed also by a recent decision in this District, which granted a motion to strike the class allegations in a complaint brought under the TCPA. *See Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013). In *Lindsay*, the defendant moved to strike the plaintiff's class allegations after limited discovery. Further, in connection with the defendant's motion and a related motion by the plaintiff to compel further discovery, the defendant submitted declarations from several corporate staff members which, in the court's view, suggested that the unsolicited fax messages received by the plaintiff were, in essence, an aberration rather than part of any broader, facsimile-centered marketing scheme. *See id.* at *5 ("In this case, there is no evidence that defendant engaged in blast faxing on its own or through a third party or worked off a nationwide leads list. Indeed, the evidence indicates that there is no national policy of distributing advertising materials via facsimile transmission.").[7]

---

[6] The Court notes that, because potential recipients' existing business relationships with Defendants and consent are affirmative defenses under the TCPA (*see* n.2, *supra*), these issues do not necessarily defeat the commonality and typicality requirements of Fed.R.Civ.P. 23(a)(2) and 23(a)(3). *See, e.g.*, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988)) (where a single course of conduct by defendant may establish proof common to class individualized defenses do not defeat commonality); *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); 7A Fed. Prac. & Proc. Civ. § 1764 (2d ed. 1987)) ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.").

[7] *Lindsay* also concerned a so-called "fail-safe class," *i.e.*, "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim" on the merits. *Lindsay*, 2013 WL 275568, at *4 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Indeed, the plaintiff's proposal of a "fail-safe class" was the primary legal basis for striking the class allegations in *Lindsay*. Yet there is some debate within the federal courts as to whether a "fail-safe class" is inherently problematic, and the Eighth Circuit has not weighed in on this debate. *See, e.g.*, *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012) ("our precedent rejects the fail-safe class prohibition"); *In re Autozone, Inc., Wage and Hour Employment Practices Litig.*, --- F.R.D. ----, 2012 WL 6679983, at *20 (N.D. Cal. Dec. 21, 2012) (discussing cases) (noting "it is not clear that the Ninth Circuit forbids fail-safe classes"). Moreover, in the face of a "fail-safe class," district courts have broad discretion to redefine the class in order to avoid issues that such a class definition may present. *See, e.g.*, *Messner*, 669 F.3d at 825 ("Defining a class so as to avoid,

In the instant case, unlike *Lindsay*, there is no factual basis for the court to find that the fax messages in question were an aberration, part of a "blast faxing" campaign, or something altogether different. *Compare, e.g.*, *Hinman*, 545 F. Supp. 2d at 807 (certifying class in case brought under TCPA where "[t]he fax broadcasts at issue were sent *en masse* to recipients identified on a singular 'leads' list obtained from a singular source") *with Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, (N.D. Ill. 2008) (declining to certify class in case brought under TCPA where "there appears to be *no* list of numbers from which the parties (or the court) may reasonably assume class members could be identified" and "[i]t is unclear from the parties' submissions whether [a third-party marketing company engaged by the defendant] would have any records that may reveal the intended recipients of the fax") (emphasis in original).

Accordingly, lacking any evidentiary record, the Court will not, at this juncture, dismiss or strike Plaintiff's class allegations.

## IV. CONCLUSION

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss the Complaint or, in the Alternative, Dismiss or Strike the Class Allegations from the Complaint (Doc. No. 17) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 13th day of March, 2013.

---

on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."); *see also, e.g.*, *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73–74 (D. Me. 2010) (revising class definition to avoid "fail-safe class" concerns); *Demmick v. Cellco P'ship*, 2010 WL 3636216, at *6-7 (D.N.J. Sept. 8, 2010) (same); *Dodd-Owens v. Kypon, Inc.*, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (same). In any event, because Defendants do not argue that the proposed class in this action is a "fail-safe class," the Court will not delve further into the matter.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE